920 So.2d 136 (2006)
Santiago MEDINA, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D05-2704.
District Court of Appeal of Florida, Third District.
February 1, 2006.
Santiago Medina, in proper person.
Charles J. Crist, Jr., Attorney General, for appellee.
Before GREEN, RAMIREZ, and ROTHENBERG, JJ.
ROTHENBERG, Judge.
On November 17, 2000, the defendant pled no contest to five counts of engaging in sexual acts with a child within the familial context, four counts of lewd and lascivious molestation of a child between the ages of twelve to sixteen, one count of tampering with a witness, and one count of resisting an officer without violence. He was sentenced to five years probation with special conditions, including that he serve 220 days in the Dade County Jail (with a recommendation of work release), and that he enter and successfully complete the Mentally Disordered Sex Offender Program.
On January 10, 2001, the defendant's probation was modified to include a stay-away order from the victim.
Subsequently, an affidavit for violation of probation was filed, alleging several violations of the defendant's probation, including:
 submitting a false monthly report
 failing to pay the cost of supervision

*137  failing to live without violating the law (committing the offense of loitering on May 19, 2002)
 failing to pay court ordered costs
The defendant pled guilty to these violations on July 16, 2002, which resulted in a second modification of the defendant's sentence. The modification provided that the defendant would be placed on two years of community control with electronic GPS monitoring, followed by probation, until November 16, 2005, with the same conditions previously imposed.
On August 1, 2002, another affidavit for violation of community control was filed, alleging nine violations: three for failing to remain confined to his residence except for approved activities, three for appearing at the victim's residence despite the order that he have no contact (directly or indirectly) with the victim, and three for violating the stay-away order imposed by the court.
After conducting a probation violation hearing on October 4, 2002, the trial court found that the above violations were proven, and sentenced the defendant to ten years incarceration. On December 29, 2004, we affirmed the judgment and sentence after granting the defendant a belated appeal. Medina v. State, 889 So.2d 1008 (Fla. 3d DCA 2004).
On August 5, 2005, the defendant filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 based upon two claims of ineffective assistance of trial counsel: (1) that his initial plea of no contest to the charges was based upon his trial attorney's misadvice that if he violated his probation, he would serve no more than five years incarceration; and (2) that his trial attorney failed to make a "specific Frye objection" to the GPS tracking evidence introduced against him at the hearing, thus precluding appellate review.
On October 20, 2005, the trial court denied the defendant's motion for postconviction relief finding that (1) the plea colloquy refuted the defendant's claim of misadvice as the trial judge "informed the defendant what could happen to him if he violated his probation" and never told him his exposure would be limited to five years; and (2) that counsel was not ineffective for failing to make a Frye objection, as GPS technology is commonly accepted within the scientific community and thus not subject to a Frye hearing. It is this denial which the defendant now appeals.
After a careful review of the record before us, we reverse and remand with instructions consistent with this opinion, the trial court's order denying relief as to the defendant's first claim; and affirm the trial court's order denying relief as to the defendant's second claim.
The portion of the trial court's order upon which we reverse is based upon the defendant's claim that his attorney provided ineffective assistance of counsel by misadvising him that the greatest penalty he was facing upon a violation of probation was five years, when, in fact, he was risking a much greater penalty and was sentenced to ten years upon violation of the conditions of his probation. The trial court denied this claim based upon its findings that the judge who placed him on probation "informed the defendant what could happen to him if he violated his probation and never told him his exposure would be limited to five years." A review of the plea transcript, however, does not support this finding. While the trial court advised the defendant of the maximum penalties the defendant was facing if he was tried and convicted of the charges, the trial judge did not fully inform the defendant of the potential consequences he was facing upon a violation of his probation. *138 What the trial court informed the defendant was that if he violated his probation, he could be sentenced to prison time. "Do you further understand by entering the plea, I will place you on probation, if you violate your probation, you could be going to state prison?" As the trial court did not advise the defendant as to the maximum sentence he was facing upon a violation of probation and did not specifically ask the defendant if anyone had offered him or promised him anything other than what was contained in the plea in order to induce him to enter into the negotiated plea, we cannot conclude that the record unequivocally refutes the defendant's claim that he entered into the negotiated plea based upon his lawyer's advice that upon a violation he was facing at most, a five year sentence. We, therefore, reverse the trial court's denial regarding this claim and remand for an evidentiary hearing to address the veracity of this claim. As the defendant asserts that both his original trial counsel and the attorney who represented him when his probation was modified on July 16, 2002, informed him that the maximum penalty he was facing upon a violation of his probation was five years, both attorneys must be present for the evidentiary hearing.
The second ground raised in the defendant's motion for postconviction relief is that his trial counsel failed to make a "specific Frye objection" to the GPS tracking evidence introduced at his probation violation hearing, thus precluding appellate review. The trial court denied this claim on the ground that GPS technology is commonly accepted within the scientific community and thus not subject to a Frye hearing. While we agree with the trial court that GPS tracking technology is not new or novel and has long been accepted within the scientific community as reliable, the trial court need not have addressed the merits as the record conclusively refutes the defendant's claim. The defendant's trial attorney did in fact object to the introduction of this evidence and argued that a Frye hearing was required. Additionally, the record reflects that this issue was the sole issue raised on direct appeal (affirmed in Medina v. State, 889 So.2d 1008 (Fla. 3d DCA 2004)). We, therefore, concluded that the record not only refutes the defendant's claim, but also reflects that the issue was litigated in direct appeal and is, therefore, procedurally barred. We, therefore, affirm the trial court's denial of the defendant's motion on this ground. See Robertson v. State, 829 So.2d 901, 902 (Fla.2002)(citing Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 644 (Fla.1999))(The "longstanding principle of appellate law, sometimes referred to as the `tipsy coachman' doctrine, allows an appellate court to affirm a trial court that `reaches the right result, but for the wrong reasons' so long as `there is any basis which would support the judgment in the record.'").
Affirmed in part, reversed in part, and remanded.