Forst, J.
Appellant Pablo Dellatorre appeals the trial court’s final summary judgment in favor of Appellee Buca Restaurants, Inc. (“Buca”). We affirm without discussion Appellant’s first argument on appeal regarding whether the trial court impermissibly relied on personal opinion when granting Buca’s motion for summary judgment. We write solely to address Appellant’s second contention that there remained genuine issues of material fact precluding summary judgment. As discussed below, we agree with Appellant and reverse and remand.
Background
In 2014, Appellant dined at one of Buca’s restaurants, where he had eaten twice before. He ordered the “Linguine Frutti di Mare,” a pasta dish he had eaten on one of his previous visits, which the menu described as having “shrimp, baby clams, mussels and calamari in spicy red clam sauce.” Accompanying the description was a picture of the dish itself showing linguine surrounded by approximately twenty fully-intact mussel shells. A corporate representative for Buca testified at a deposition that, according to standard operating procedure, chefs typically prepare this dish by placing linguine in the center of the plate, and then surrounding the *273 linguine (and the other seafood) with a ring of mussels. Chefs visually inspect each mussel, making sure not to serve broken mussel shells. As the representative explained, “if there’s a shell that is not completely intact, meaning it’s not opened fully or it’s not 100 percent, that dish would never even get to the pasta stage.”
Appellant testified at his deposition that, after consuming most of his entrée, “[t]he plate was almost empty. I put the last bite in my mouth, as we are here; then all of a sudden I felt something here that was going down and cutting me. It seemed as if it was opening my chest up in two as if I had swallowed a knife.” Appellant was rushed to the hospital where surgery was performed. The medical staff extracted what both parties agreed was “a broken mussel shell, about one-and-a-half to two inches long.”
Appellant also explained at the deposition that he “wasn’t expecting to find this broken shell in the plate of pasta.” He swore in an affidavit that he “did not cause the shells to break in [his] dish at any point during the meal. The shell was broken and lodged in [his] throat [and] was served to [him] in the broken sharp condition by Defendant, Buca, Inc.” Another patron dining with Appellant that night swore the same: that Appellant did not break the mussel shell, and that Buca did instead. However, Buca’s representatives denied the restaurant could have served Appellant a broken mussel shell. At a deposition, Buca’s corporate representative suggested at various times that Appellant must have broken the mussel shell when he ate it.
Ultimately, the trial court granted Buca’s motion for summary judgment, finding that there were no genuine issues of material fact and that Appellant was himself negligent in eating the broken mussel shell.
Analysis
“The standard of review for an order granting summary judgment is de novo.” Int’l Christian Fellowship, Inc. v. Vinh on Prop., Inc., 954 So.2d 1214, 1215 (Fla. 4th DCA 2007) (quoting 5th Ave. Real Estate Dev., Inc. v. Aeacus Real Estate Ltd. P’ship, 876 So.2d 1220, 1221 (Fla. 4th DCA 2004)).
In order for a party to prevail under summary judgment, he or she must satisfy two steps: “[t]he judgment sought shall be rendered forthwith if the pleadings and summary judgment evidence on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Fla. R. Civ. P. 1.510(c); see also Wills v. Sears, Roebuck & Co., 351 So.2d 29, 30 (Fla. 1977); Fini v. Glascoe, 936 So.2d 52, 54 (Fla. 4th DCA 2006). As the Second District Court of Appeal stated, when a record “raises even the slightest doubt that an issue might exist, that doubt must be resolved against the moving party and summary judgment must be denied.” Nard, Inc. v. DeVito Contracting & Supply, Inc., 769 So.2d 1138, 1140 (Fla. 2d DCA 2000).
Here, the record raises doubt that there are no genuine issues of material fact. There are at least two: which party broke the mussel shell Appellant consumed, and whether the broken mussel shell was submerged in the pasta when it was served to Appellant (and thus not visible when consumed).
Buca’s corporate representative denied several times at a deposition that Buca would have served Appellant a broken mussel shell, and averred that Appellant must have broken the shell: “It would be my understanding that the shell was broken upon the guest’s contact with the dish. ... Experience being I’ve never seen a *274 broken shell in a dish that’s been received that’s caused a complaint.” Buca further represented that it had a standard operating procedure in which chefs would visually inspect each mussel and then hand place each one in a circle around the pasta—not in the pasta. Buca’s corporate representative acknowledged the dish was supposed to come with fully intact mussel shells, placed around the linguine. In direct disagreement, Appellant asserted in his affidavit and at his deposition that Buca served him the broken mussel shell, and that he did not break it. A witness at the scene that was dining with Appellant also swore in an affidavit that Buca must have served Appellant the broken shell. Moreover, both Appellant and the witness claimed the broken shell was “hidden” under the pasta, not placed in the ring of mussels.
Which party broke the mussel shell and if it was submerged in the pasta when served are dispositive factual issues with respect to determining if Buca was negligent. If Appellant broke the shell after it was served to him and it was not served submerged (and thus not visible) in the pasta, it would be difficult to conclude that Buca was negligent for serving this order of Linguine Frutti di Mare—a dish known to contain mussel shells. However, if Buca did in fact serve Appellant the broken mussel shell and/or it was not visible when the entrée was presented to Appellant, then the jury could find that no patron would reasonably expect to so find a broken shell in this dish.
We conduct a “reasonable expectation” test to determine if a restaurant is negligent when it serves a patron “a harmful substance.” Zabner v. Howard Johnson’s, Inc., 201 So.2d 824, 825-26 (Fla. 4th DCA 1967). In Zabner, a restaurant served a patron walnut maple ice cream that contained a walnut shell that injured the patron. Id. at 825. The trial court held that the restaurant was not negligent and was entitled to summary judgment because the walnut shell was a “natural” ingredient of the walnut ice cream. Id. On appeal, we noted that a patron is likely to reasonably expect a natural ingredient in his or her meal, but not always. Id. at 826. Determining that it was unclear whether a patron would reasonably expect a walnut shell in his or her walnut ice cream, we remanded for a jury trial, explaining, “what might be natural to the ingredients of that food prior to preparation and what is reasonably expected by the consumer is a jury question in most cases.” Id. at 828.
The test should be what is “reasonably expected” by the consumer in the food as served, not what might be natural to the ingredients of that food prior to preparation.
Id. at 826. As such, “the test is related to the foreseeability of harm on the part of the defendant.” Id. at 827; see also Mexicali Rose v. Superior Court, 1 Cal.4th 617, 4 Cal.Rptr.2d 145, 822 P.2d 1292, 1303 (1992) (“[I]t is a question for the trier of fact to determine whether the presence of the injury-producing substance was caused by the failure of the defendants to exercise reasonable care in the px-eparation of the food, and whether the breach of the duty to exercise such care caused the consumer’s injury.”). Compare Betehia v. Cape Cod Corp., 10 Wis.2d 323, 103 N.W.2d 64, 69 (1960) (“What is to be reasonably expected by the consumer is a jury question in most cases; ... we cannot say as a matter of law that a patron of a restaurant must expect a [chicken] bone in a chicken sandwich .... ”), with Ex parte Morrison’s Cafeteria of Montgomery, Inc., 431 So.2d 975, 978-79 (Ala. 1983) (adopting the reasonable expectation test but affirming the trial court’s judgment that, as a matter of *275 law, a patron could reasonably expect to find a fish bone in a fish fillet).
Although the trial court here applied the correct reasonable expectation test, this case is no exception to the general rule that most cases presenting this scenario require jury trials. A Buca patron would reasonably expect whole mussel shells with the pasta. After all, the menu explained and showed that the dish came with fully intact mussels, arrayed in a ring on top of the pasta. The determinative questions at issue in this case are whether Appellant was served a broken mussel shell and whether it was submerged (“hidden”) in the pasta. As material factual disputes remain to be resolved, the grant of summary judgment was inappropriate.
Conclusion
There remain at least two genuine issues of material fact in Appellant’s lawsuit against Buca: whether Appellant or Buca broke the mussel shell, and whether the shell at issue was invisibly served underneath the pasta. As such, the trial court erred in finding Buca entitled to judgment as a matter of law. The court reached an erroneous conclusion in its application of the reasonable expectation test when it found that Appellant should have reasonably expected a broken mussel shell—such a conclusion is contrary to both parties’ arguments. Accordingly, we reverse the trial court’s grant of final summary judgment and remand for further proceedings.

Reversed and remanded.

Warner and Gross, JJ., concur.